Fred Harvey v. Commissioner.
Harvey v. Commissioner
Docket No. 21835.
United States Tax Court
1952 Tax Ct. Memo LEXIS 130; 11 T.C.M. (CCH) 773; T.C.M. (RIA) 52242; July 28, 1952
*130 On February 1, 1945, petitioner transferred by gift a five per cent interest in The Harvey Co. to a trust for his son. Held, the value of this gift at the date of transfer was $40,000. Llewellyn A. Luce, Esq., 937 Munsey Bldg., Washington, D.C., for the petitioner. S. Earl Heilman, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion Respondent determined a deficiency in gift tax against petitioner of $3,045 for the year 1945. The deficiency is due to two adjustments, only one of which is now before the Court. The contested adjustment is due to respondent's increasing *131 the value of the net gifts reported for 1945 from $33,500 to $45,000, which is explained in the deficiency notice as follows: "It is determined that the 5% interest in The Harvey Company transferred by gift by you during the calendar year 1945 had a value as of the date of its transfer of $45,000.00. This determination is on the basis of a fair appraisal as of the date of the transfer of all the assets of the business, tangible and intangible, including good will, and the prior sale of a similar interest in the business." Respondent also disallowed the exclusion of $3,000, which adjustment is conceded by petitioner in his brief as follows and will be given effect under Rule 50: "The petitioner abandons the contention that the gift in question was not a gift of a future interest, and that there should be allowed an annual exclusion of $3,000.00. The case of , with opinion by Black, J., is directly in point, and is conclusive to the effect that the interest here involved is a future interest, and no annual exclusion of $3,000.00 is allowable, Thus, petitioner abandons this point, and there is no issue as to it." *132 Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner Fred Harvey is an individual residing in Nashville, Tennessee, and filed a Federal gift tax return for the calendar year 1945 with the Collector for the District of Tennessee. Prior to the year 1942, a corporation, Denton and Company, organized on August 4, 1939 under the laws of the State of Tennessee, owned and operated a department store at 518 Church Street, Nashville, Tennessee. During the month of January 1942, the petitioner purchased all of the capital stock of the corporation, Denton and Company, for the sum of $131,000. The corporation continued to operate the department store under the name of Denton and Company until April 23, 1942, when the name of the corporation was changed to Harvey's, Inc., which corporation continued to operate the department store until April 30, 1943. On April 30, 1943, the corporation was dissolved and a partnership agreement was entered into under the name and style of The Harvey Co., which business continued to operate the department store until February 1, 1946, when the business was incorporated. Under the partnership agreement of May 1, 1943, the *133 petitioner gave to Dorothea Harvey, his wife, a 10 per cent interest in The Harvey Co. and to James M. Todd, trustee for Judith Harvey, petitioner's daughter, and for Frederic Morton Harvey, petitioner's son, a 20 per cent interest, 10 per cent for each child. A Federal gift tax return for 1943 was filed in which each 10 per cent interest was valued at $15,653.99. On February 1, 1944, the petitioner sold, transferred and conveyed to Edward J. Miller a 5 per cent interest in The Harvey Co. for the sum of $33,500. On the same date petitioner also made a gift of a 5 per cent interest in The Harvey Co. to James M. Todd, trustee for Frederic Morton Harvey, son of petitioner. A gift tax return for 1944 was filed and the gift was valued therein by petitioner at $33,500. On February 1, 1945, the petitioner made a gift of a 5 per cent interest in The Harvey Co. to James M. Todd, trustee for Frederic Morton Harvey, son of petitioner. A Federal gift tax return for the year 1945 was filed by petitioner and the gift was valued at $33,500. The value of this gift is the issue in this proceeding. The department store business operated by petitioner, prior to the acquisition by petitioner of *134 all interest in it in January 1942, lost money for three consecutive years, as follows: Year Ended
January 31
Loss
1940
$54,116.59
1941
89,204.18
1942
16,164.82 For the subsequent years after petitioner acquired the department store business the total sales and net profit increased rapidly as follows: Year Ended
January 31
Total Sales
Net Profit
1943
$ 939,859.24
$ 94,328.06
1944
2,138,948.96
305,059.25
1945
3,485,985.22
370,037.84 The book value of the net worth of the business also increased as follows: Date Determined
Net Worth
May 1, 1943
$156,539.93
January 31, 1944
385,336.71
January 31, 1945
518,949.82
On January 1, 1945, the inventories were in a favorable position with a ratio of current assets to current liabilities of 1.79 to 1. On none of the balance sheets of the business was there shown any asset denominated good will. At the date of the gift the lease to a portion of the property in which the business was operated had eight years and eleven months to run, with no option in the lease agreement for renewal. In 1945, The Harvey Co. was largely a one-man company depending for its management *135 and successful operation on one man, the petitioner Fred Harvey. The Harvey Co. lacked sufficient equity capital for its large and growing business. It had to resort to factoring its accounts to get sufficient operating capital, paying interest at the rate of 9 per cent per year. Notwithstanding this unfavorable factor, its earnings in 1945 were the largest in its history, being $370,037.84 for that year. The management did much more newspaper advertising than any other Nashville store, and, as a result of that and good management, the business became well and very favorably known. On February 1, 1945, the value of a 5 per cent interest in the entire assets, tangible and intangible, including good will, of the business operated as The Harvey Co. was $40,000. The gift in trust to petitioner's son was a gift of a future interest against which no exclusion is allowable. Opinion BLACK, Judge: Originally there were two issues in this proceeding, (1) the value of the gift which petitioner made to his son in trust on February 1, 1945, and (2) whether that gift was a future interest in property rather than a present interest. Petitioner on brief concedes the latter issue and it *136 is no longer in controversy. Issue (1) remains. The applicable statute and regulations are printed in the margin. [1]
*137 It is petitioner's contention that the value of the 5 per cent interest which petitioner gave to his son in the business of The Harvey Co. on February 1, 1945, was no greater than $33,500. In fact, he contends that the value of this interest was $25,000 instead of the $33,500 which petitioner returned in his gift tax return. Petitioner bases his contention largely on the testimony of his expert witness, Walter M. Robinson. Of course, if the testimony of Robinson was all that we have before us we would doubtless have to agree with petitioner for the lack of other information. But the stipulation of facts contains many other facts which we must consider in arriving at our decision as to valuation. Naturally the testimony of an expert witness like Robinson must be considered but, on the other hand, it cannot and it should not blind us to other facts which are in the record. Among the other very pertinent facts which are in the record are that petitioner sold a 5 per cent interest in the business of The Harvey Co. to Edward J. Miller on February 1, 1944, one year previous to the gift here in question for $33,500. On the same date petitioner also made a gift in trust for the benefit *138 of his son of a 5 per cent interest in the business and in his Federal gift tax return filed for that year he valued the gift at the same figure for which he had sold the 5 per cent interest to Edward J. Miller, $33,500. This plainly shows, we think, that petitioner valued a 5 per cent interest in The Harvey Co. on February 1, 1944, at $33,500, yet he would have us believe that one year later, to wit February 1, 1945, a 5 per cent interest in The Harvey Co. still had a value of only $33,500. We are unable to accept this estimate of valuation in the face of the stipulated facts. At the end of the fiscal year ending January 31, 1944, when petitioner gave to his son the first 5 per cent in The Harvey Co., the value of the net worth according to the books of The Harvey Co. was $385,336.71 and its net income for that fiscal year was $305,059.25. One year later, at the end of the fiscal year ending January 31, 1945, the time when the gift here in issue was made, the total book net worth value of The Harvey Co. was $518,949.82, and its net income for the year was $370,037.84. Yet, in the face of this large growth of net worth and net income, we are asked to find that a 5 per cent interest *139 in The Harvey Co. was still worth not more than $33,500, the figure at which petitioner returned it for gift tax purposes in valuing the gift which he made February 1, 1944. We are, as we have already said, unable to make such a finding. As we have already pointed out petitioner himself returned the value of the 5 per cent interest in The Harvey Co. which he gave to his son February 1, 1944, at $33,500, although such interest had a book value of only $19,266.84. A similar 5 per cent interest was sold to Edward J. Miller for $33,500 in an arm's length transaction. This means that this 5 per cent interest was sold to Miller for $14,233.16 more than the book net worth value of the tangible assets of that interest, $19,266.84. Thus, the value in effect fixed by the parties for the intangibles at that date was 73.87 per cent of the tangibles shown by the balance sheet. On February 1, 1945, the net book value of a 5 per cent interest in the tangible assets had increased to $25,947.49 and even if we assume there was no increase in the value of intangibles, there was an actual increase in the value of tangible assets represented by a 5 per cent interest in the partnership of $6,680.55. This *140 increase, when added to the $33,500 value on February 1, 1944, gives a value of $40,180.45. Therefore, because of the foregoing reasons and others deduced from the record, we think the valuation of $40,000 which we have fixed in our Findings of Fact is reasonable and is well supported by the evidence. A 5 per cent interest in a business which shows a net income attributable to a 5 per cent interest in 1943 of $4,716.40, in 1944 of $15,252.96, and in 1945 of $18,501.89 is not over valued, we think, at $40,000. It is generally recognized that ordinarily one of the most satisfactory methods of fixing the value attributable to intangible assets in a business is to capitalize the earnings which properly may be allotted thereto. The general rule is stated in 10A Mertens, The Law of Federal Income Taxation ( 1948) section 59.37, pages 75 and 76, as follows: " § 59.37. Capitalization of Earnings. There is no general rule for the valuation of intangibles; hence, the value of goodwill is ordinarily best demonstrated by the capitalization of earnings attributable thereto. The usual method is as follows: the amount of earnings attributable to the goodwill is determined (1) determining the *141 average annual net earnings of the business, (2) determining the value of the tangible assets, (3) deducting from the total net earnings the earnings attributable to the tangible property, and (4) capitalizing the balance. * * *" In (1920) A.R.M. 34, , a ruling frequently cited in cases dealing with the valuation of intangibles, the same method as suggested by Mertens, supra, was set out as one of the suggested methods of valuation of such assets. In arriving at our valuation of $40,000 we have not used the capitalization of earnings method because the partnership of The Harvey Co. had only a three-year existence, but if we had used it manifestly, we would arrive at a valuation considerably higher than $40,000. Decision will be entered under Rule 50. Footnotes
1. INTERNAL REVENUE CODE. SEC. 1003. NET GIFTS. (a) General Definition. - The term "net gifts" means the total amount of gifts made during the calendar year, * * *. SEC. 1005. GIFTS MADE IN PROPERTY. If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift. REGULATIONS 108. Section 86.19. Valuation of Property. - * * *
(d) Interest in business. - Care should be taken to arrive at an accurate valuation of any business which the donor transfers without an adequate and full consideration in money or money's worth, whether the interest transferred is that of a partner or of a proprietor. A fair appraisal as of the date of the gift should be made of all the assets of the business, tangible and intangible, including good will, and the business should be given a net value equal to the amount which a willing purchaser, whether an individual or a corporation, would pay therefor to a willing seller in view of the net value of the assets of the business and its demonstrated earning capacity. Special attention should be given to fixing an adequate figure for the value of the good will of the business. The factors hereinbefore stated relative to the valuation of other property, if applicable, will be considered in determining the valuation of a proprietary or partnership interest in the business. All evidence bearing upon such valuation should be submitted with the return, including copies of reports in any case in which examinations of the business have been made by accountants, engineers, or any technical experts as of or near the date of the gift.↩